UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| IN RE:<br><br>BILLIE JO DAVIS,<br><br>    Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>) | CHAPTER 7<br><br>CASE NO. 17-54136-MGD |

-----------------------------------------------)-------------------------------------------

|  |  |  |
|---|---|---|
| WILLIAM J. LAYNG, JR., Chapter 7 Trustee<br>for the estate of Billie Jo Davis,<br><br>    Plaintiff,<br>v.<br><br>WELLS FARGO BANK, N.A. f/k/a<br>WASHINGTON MUTUAL BANK, F.A.,<br>KAREN DENISE FIDELL DIXON,<br>KARL M. DESOUZA,<br>COBB COUNTY TAX COMMISSIONER,<br>INTERNAL REVENUE SERVICE,<br>GEORGIA DEPARTMENT OF REVENUE,<br>ROBERT C. GRITTER,<br>and BILLIE JO DAVIS,<br><br>    Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CONTESTED MATTER |

**TRUSTEE'S MOTION FOR AUTHORITY TO (I) SELL PROPERTY OF THE ESTATE
FREE AND CLEAR OF ALL LIENS, INTERESTS, AND ENCUMBRANCES, AND
(II) DISBURSE CERTAIN PROCEEDS AT CLOSING**

COMES NOW William J. Layng, Jr., as Chapter 7 Trustee ("**Trustee**") for the

bankruptcy estate of Billie Jo Davis ("**Debtor**"), pursuant to 11 U.S.C. §§ 363(b), (f), and (m),

and Fed. R. Bankr. P. 2002(a)(2), 6004(a), 6004(c) and 9014, by and through undersigned

counsel, and files *Trustee's Motion for Authority to (I) Sell Real Property of the Estate Free and*

*Clear of Liens, Interests, and Encumbrances, and (II) Disburse Certain Proceeds at Closing* (the

"**Sale Motion**").  In support of the Sale Motion, Trustee shows the Court as follows:

**Venue and Jurisdiction**

1.      This Court has jurisdiction over this Sale Motion under 28 U.S.C. §§ 157 and 1334.  Venue of this case in this District is proper under 28 U.S.C. §§ 1408 and 1409.  This Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

**Background**

*i. General Background*

2.      On March 6, 2017 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, initiating Case No. 17-54136-MGD (the "**Case**").

3.      On or about the Petition Date, Trustee was appointed to the Case as interim Chapter 7 Trustee, under 11 U.S.C. § 701(a)(1).

4.      The meeting of creditors was held and concluded on April 11, 2017, pursuant to 11 U.S.C. § 341(a), at which time Trustee became the permanent Chapter 7 Trustee under 11 U.S.C. § 702(d).

5.      At the commencement of the Case, the bankruptcy estate was created under 11 U.S.C. § 541(a) (the "**Estate**"), and it includes all of Debtor's legal or equitable interests in property as of the commencement of the Case and any interest in property that it acquires after commencement of the Case.  11 U.S.C. § 541(a)(1) and (7) (2017).

6.      Trustee is the sole representative of the Estate.  11 U.S.C. § 323(a) (2017).

7.      Trustee filed his *Application to Appoint Attorney for Trustee* [Doc. No. 20] on May 15, 2017, and the Court entered an *Order* [Doc. No. 21] on May 17, 2017, appointing Arnall Golden Gregory LLP as attorneys for Trustee.

### ii. The Property

8.      On her *Schedule A/B: Property* [Doc. No. 1 at page 15 of 73], Debtor scheduled her ownership interest in that certain real property known generally as 1475 Wimbledon Drive, NW, Kennesaw, Cobb County, Georgia 30144 (the "**Property**").

9.      On her *Schedule C: The Property you Claim as Exempt* [Doc. No. 1 at page 21 of 73], Debtor claimed an exemption in the Property of $6,086.00 under O.C.G.A. § 44-13-100(a)(6) (the "**Exemption**").[1]

### iii. Liens, Interests, and Encumbrances

10.      On her *Schedule D: Creditors Who Have Claims Secured by Property* [Doc. No. 1 at pages 23-24 of 73], Debtor scheduled two claims against the Property in the amounts of (a) $160,000.00 in favor of Karen Denise Fidell Dixon ("**Ms. Dixon**"), and (b) $776.00 in in favor of Cobb County Tax Commissioner ("**Cobb County**") for past due *ad valorem* real property taxes.

11.      Through his investigation of Debtor's financial affairs, Trustee discovery that Ms. Dixon asserted a second position security interest in the Property as a result of a Purchase Money Deed to Secure Debt (the "**Dixon Deed**").  In this regard, on August 10, 2017, Ms. Dixon filed a proof of claim [Claim No. 7-1] in the amount of $160,564.63, all of which she designated as secured.

12.      Upon information and belief, Debtor and her husband have been in default on the debt secured by the Dixon Deed for years.

13.      Trustee obtained a full title examination report of the Property dated May 22, 2017 (the "**Title Report**"), which confirms Ms. Dixon's second position security interest in the

---

[1]      As set forth below, there is an insufficient amount of equity for Debtor's exemption to attach to the Property.

property.  Upon information and belief, Ms. Dixon later assigned the Dixon Deed to herself and

Karl M. deSouza ("**Mr. deSouza**").

14.    The Title Report also reflects a first position *Security Deed* dated June 27, 2001

and recorded on the real property records on July 6, 2001, in favor of Wells Fargo Bank, N.A.

f/k/a Washington Mutual Bank, FA ("**Wells Fargo**") in the original principal amount of

$142,000.00 (the "**Wells Fargo Deed**").  Upon information and belief, the Wells Fargo Deed

secures a debt with an approximate payoff in the amount of $90,000.00.

15.    Additionally, the Title Report reflects the following liens against the Property:

(a)    a *Federal Tax Lien,* dated July 15, 2010 and recorded July 23, 2010, in

favor of the Internal Revenue Service ("**IRS**") against the Debtor and Billy W. Davis

("**Mr. Davis**")[2] in the amount of $34,968.59, representing federal taxes due on income

earned in 2008;

(b)    a *Federal Tax Lien,* dated January 24, 2011 and recorded on February 1,

2011, in favor of the IRS against Debtor and Mr. Davis in the amount of $25,583.17,

representing federal taxes due on income earned in 2006 - 2007;

(c)    a *State Tax Execution*, dated March 1, 2011 and recorded September 6,

2011 in favor of the Georgia Department of Revenue ("**GaDOR**") against Debtor and

Mr. Davis in the amount of $2,300.69, representing state taxes due on income earned in

2000;

---

[2]    Upon information and belief, Mr. Davis is Debtor's husband.

(d)      a *Federal Tax Lien,* dated October 31, 2011 and recorded November 14, 2011, in favor of the IRS against Debtor in the amount of $19,064.86,[3] representing federal taxes due on income earned in 2009;

(e)      a *State Tax Execution,* dated August 14, 2012 and recorded on November 1, 2012, in favor of the GaDOR against Debtor and Mr. Davis in the amount of $1,447.74, representing state taxes due on income earned in 2010;

(f)      a *Federal Tax Lien,* dated November 20, 2012 and recorded December 3, 2012, in favor of the IRS against Debtor and Mr. Davis in the amount of $13,347.77, representing federal taxes due on income earned in 2010; and

(g)      a *Writ of Fieri Facias* (the "**Gritter Fi Fa**"), dated February 10, 2017 and recorded February 24, 2017, in favor of Robert C. Gritter ("**Mr. Gritter**") against Debtor and Mr. Davis in the amount of $150,378.20 (the "**Gritter Judgment**").  The Gritter Fi Fa was recorded just ten (10) days before the Petition Date, which resulted in an avoidable preference under 11 U.S.C. § 547.

16.      Under 11 U.S.C. §§ 363(b) and (f), Trustee can sell the Property free and clear of all such liens and interests.  Moreover, under 11 U.S.C. § 724(b), any enforceable lien of the IRS or the GaDOR may be subordinated by the Trustee to pay Chapter 7 administrative expenses.

### iv. The Estate Carve-Out

17.      Earlier in this Case, Trustee asserted that Ms. Dixon's alleged security interest in the Property (created through the Dixon Deed) (the "**Dixon Second Priority Security Interest**")

---

[3]      The Internal Revenue Service has filed a proof of claim in this Bankruptcy Case in which it references this tax lien, but it did not reference any of the other alleged tax liens in its proof of claim.  *See* [Claim No. 1].

reverted to Debtor prior to the Petition Date under O.C.G.A. § 44-14-80 (the "**Reversion Issue**"). Ms. Dixon and Mr. deSouza contested Trustee's assertions in this regard.

18.     In resolution of the Reversion Issue, Trustee entered into a settlement (the "**Dixon Settlement**") with Ms. Dixon and Mr. deSouza, in which, *inter alia*,[4] the Estate would receive a carve-out from the Dixon Second Priority Security Interest in the amount of $75,000.00 (the "**Estate Carve-Out**") and Ms. Dixon would retain and be paid (the "**Dixon Secured Claim Payment**") the remainder (the "**Remainder**") of the Dixon Second Priority Security Interest in an amount up to $160,564.63 less $75,000.00, based on available funds, following any sale of the Property by Trustee.

19.     On September 27, 2017, Trustee filed *a Motion for Order: (A) Authorizing the Settlement Between Trustee, Karen Denise Fidell Dixon, and Karl M. deSouza Under Rule 9019 of the Federal Rules of Bankruptcy Procedure, (B) Establishing the Extent, Validity, and Priority of the Security Interest of Karen Denise Fidell Dixon in Accordance with the Proposed Settlement, and (C) Authorizing Trustee to Make Certain Payments in Accordance with the Proposed Settlement* [Doc. No. 41] (the "**Dixon Settlement Motion**").

20.     On November 6, 2017, the Court entered an *Order* [Doc. No. 47] (the "**Dixon Settlement Order**"), granting the Dixon Settlement Motion and approving the Dixon Settlement.

21.     As a result, on December 1, 2017, following an appropriate application by Trustee, the Court entered an *Order* [Doc. No. 50] authorizing Trustee's employment of RE/MAX Prestige and Tony Money as the real estate agent for the Estate (the "**Realtor**") to sell

---

[4]     The following is only meant as a summary of the Dixon Settlement. To the extent that anything in this summary is contrary to the actual terms of the Dixon Settlement, the terms of the Dixon Settlement shall control.

the Property at an initial listing price of $239,900.00 (the "**Listing Agreement**").  The Listing

Agreement provides for a six percent (6%) commission to be paid on the purchase price.

### Request for Authority to Sell Property of the Estate
### Free and Clear of all Liens, Interests, and Encumbrances
### Pursuant to 11 U.S.C. §§ 363(b) and (f)

22.     After much negotiation, Trustee entered into a *Purchase and Sale Agreement* for

the sale of the Property to David Stroup (the "**Purchaser**"), "as is, where is," for an ***all-cash*** sale

price of $222,500.00 (the "**Purchase Price**"), subject to Court approval (the "**Contract**"). A true

and correct copy of the Contract is attached hereto and incorporated herein by reference as

Exhibit "A."

23.     The Purchaser was procured through the efforts of Trustee and his Realtor, is a

*bona fide* purchaser, and is not an insider of Debtor, Trustee, or the Realtor.  The Purchaser has

submitted an earnest money deposit in the amount of $3,000.00.  Trustee will pay none of

Purchaser's closing costs.

24.     Trustee's proposed Contract for a Purchase Price of $222,500.00 represents the

highest and best offer that Trustee has received, is for all cash, is subject to no contingencies, and

represents an appropriate selling price for the Property.

### Legal Analysis

### *i. Sale Free and Clear*

25.     Section 363 of the Bankruptcy Code authorizes a trustee "after notice and a

hearing . . . [to] use, sell, or lease, other than in the ordinary course of business, property of the

estate . . . ." 11 U.S.C. § 363(b)(1) (2017).  Section 105 of the Bankruptcy Code grants this Court

the authority to "issue any order, process, or judgment necessary or appropriate to carry out the

provisions of this title."  11 U.S.C. § 105(a) (2017).

26.     Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property under 11 U.S.C. § 363(b) free and clear of any interest in such property if, among other things, the price at which the property is to be sold is greater than the aggregate of the liens on such property or if the entity holding such an interest consents.   11 U.S.C. § 363(f) (2017). Specifically, that code section provides:

> (f)  The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)     *applicable nonbankruptcy law permits sale of such property free and clear of such interest*;
> (2)     *such entity consents*;
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)     *such interest is in bona fide dispute*; or
> (5)     *such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest*.

*Id.* (emphasis added).

27.     As set forth below, Trustee can, under 11 U.S.C. § 363(f), sell the Property free and clear of all liens, claims, interests, and encumbrances with any lien (to the extent valid, perfected, enforceable, and unavoidable) attaching to the proceeds of the sale with the same validity, priority, and extent as they had in the Property.

28.     Pursuant to the Title Report (defined above), Wells Fargo holds the first priority security interest in the Property with an estimated payoff in the amount of $90,000.00, and Cobb County is owed approximately $776.00 for 2017 taxes.  Thus, the proposed Purchase Price is significantly greater than the amount owed Wells Fargo and Cobb County, satisfying 11 U.S.C. § 363(f)(1).

29.     Moreover, and as previously stated, under the Dixon Settlement, approved by the Dixon Settlement Order, the Estate has received the Estate Carve-Out, representing the first

$75,000.00 from the Dixon Second Priority Security Interest in the Property, and Trustee consents to the Sale of the Property.  In addition, under Section 2.4 of the Dixon Settlement, Ms. Dixon and Mr. deSouza have consented to Trustee's selling the Property.  As a result, as to the Estate Carve-Out and the Remainder of the Dixon Second Priority Security Interest, Trustee may sell the Property free and clear of these interests under 11 U.S.C. § 363(f)(2).

30.     As for the junior liens of the IRS, GaDOR, and Mr. Gritter, Trustee can sell the Property free and clear of these interests under 11 U.S.C. § 363(f)(5), because, under applicable State law, these entities could be compelled to accept a money satisfaction of their interests. Indeed, a trustee may sell property free and clear of a junior security holder's interest under Section 363(f)(5) if the interest of the junior security holder can be eliminated under State foreclosure sale proceedings. *See In re Jolan, Inc.*, 403 B.R. 866 (Bankr. W.D. Wash. 2009); *In re Boston Generating, LLC, et al.*, 440 B.R. 302 (S.D. N.Y. 2010); *In re Wrangell Seafoods, Inc.*, Case No. K09-00012-DMD, slip op. at 2-3 (Bankr. D. Alaska March 9, 2009).

31.     In Georgia, both a foreclosure sale under power of sale and a judicial foreclosure sale cut off inferior liens, claims, and encumbrances in and to the foreclosed property. *See Rockmart Bank v. Doster*, 213 S.E.2d 645 (Ga. 1975) (stating that a foreclosure sale under a power of sale divests all junior encumbrances on the property); *Parker v. Cherokee Bldg. Supply Co.*, 64 S.E.2d 51 (Ga. 1951) (stating that the purchaser at a judicial foreclosure sale obtains full title to the subject property).  In short, because the loan secured by the Dixon Deed is in default, all junior interests could be divested under applicable State law, satisfying 11 U.S.C. § 363(f)(5).

32.     Finally, with respect to Mr. Gritter, Trustee contends that the recordation of the Gritter Fi Fa resulted in a preferential transfer that Trustee may avoid under 11 U.S.C. § 547. Therefore, at the very least, Mr. Gritter's interest in the Property, if any, arising from the Gritter

Judgment is the subject of a *bona fide* dispute, satisfying 11 U.S.C. § 363(f)(4).

33.    In sum, based upon the foregoing, Trustee can sell the Property free and clear of the interests of Wells Fargo, Cobb County, Ms. Dixon, the IRS, the GaDOR, and Mr. Gritter.

### ii. Good Faith of Trustee and Purchaser

34.    Moreover, 11 U.S.C. § 363(m) provides that the reversal or modification on appeal of an authorization of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased the property in good faith. *See* 11 U.S.C. § 363(m) (2017).

35.    Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy a good faith status involves fraud, collusion between the purchaser and other offerors or the trustee, or an attempt to take grossly unfair advantage of other offerors.  *See In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

36.    Trustee and Purchaser have proceeded in good faith, and Purchaser is a *bona fide,* good-faith purchaser and is not an insider of Debtor.  Consequently, Trustee and Purchaser are entitled to the protections of 11 U.S.C. § 363(m).

### Request for Authority to Disburse Certain Proceeds at Closing

37.    Trustee requests authority to have all sale proceeds paid to him at closing and for authority to have paid at closing: (a) the payoff to Wells Fargo; (b) all outstanding *ad valorem* real property taxes to Cobb County in the amount of $774.65 (based on a 2017 tax bill in the amount of $774.65); (c) real estate commission of six percent (6%) of the Purchase Price in the amount of $13,350.00; (d) the Estate's pro-ration of the 2018 *ad valorem* county real property taxes estimated at $254.68 (based on 2017 tax bill); (e) the Estate Carve-Out to Trustee on behalf

of the Estate in the amount of $75,000.00, in accordance with Section 2.6 of the Agreement; (f) the Dixon Secured Claim Payment to Ms. Dixon (equal to the Remainder), in accordance with Section 2.6 of the Dixon Agreement; (g) any capital gains or other taxes related to the sale (none anticipated); (h) water and sewer liens (none anticipated); and (i) all other costs of sale, or costs necessary to close a sale of the Property.

38.    All other distributions will be made only upon further order of the Court.

39.    To the extent funds are disbursed at closing by a party other than Trustee, Trustee requests that such party be treated as Trustee's designated and authorized agent.

40.    Based on the above proposed distributions, Trustee estimates that the proposed sale will result in approximately $75,000.00 coming into the Estate as a result of the Estate Carve-Out, all of which will be available to distribute in accordance with 11 U.S.C. § 726.   In other words, upon information and belief, the proposed sale of the Property to Purchaser will allow Trustee to make a meaningful distribution to holders of unsecured claims against the Estate.

**Other Relief Requested**

41.    In addition, Trustee requests that the Court waive the stay of the order approving the proposed sale as authorized under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

42.    Finally, following notice to all creditors and parties in interest of the Sale Motion, the date of the Hearing, Trustee invites any and all competing cash bid which exceed the present Contract by **at least $7,500.00,** supported by earnest money of **at two percent (2%) of the bid price**, with no contingencies, and the ability to close within ten (10) days from Bankruptcy Court approval.

WHEREFORE, Trustee respectfully requests that the Court enter an Order:

(a)      Granting the Sale Motion;

(b)      Authorizing and approving the Contract and the sale of the Property free and clear
of all liens, claims, interests, and encumbrances;

(c)      Authorizing the distribution of certain proceeds at Closing;

(d)      Authorizing the proposed sale to be consummated immediately as allowed by
Federal Rules of Bankruptcy Procedure Rule 6004(h); and

(e)      Granting such other and further relief as the Court deems just or appropriate.

Respectfully submitted this 28th day of March, 2018.

ARNALL GOLDEN GREGORY, LLP
*Attorneys for Trustee*

By:*/s/ Michael J. Bargar*
Michael J. Bargar
Georgia Bar No. 645709
michael.bargar@agg.com
171 17th Street, NW, Suite 2100
Atlanta, Georgia 30363-1031
Tele: (404) 873-8500 / Fax: (404) 873-8501

12069739v1

**EXHIBIT "A" FOLLOWS**

## TRUSTEE'S PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made and entered into by and between **WILLIAM J. LAYNG, JR., as and only as Trustee in Bankruptcy for Estate of BILLIE JO DAVIS (Chapter 7 Case No. 17-54136-MGD)** (hereinafter referred to as "Seller") and **DAVID STROUP** (hereinafter, "Purchaser");

### W I T N E S S E T H :

1.    <u>Agreement to Sell and Purchase.</u>  For and in consideration of ONE DOLLAR ($1.00) in hand paid by Purchaser in favor of Seller, receipt of which is hereby acknowledged, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Seller and Purchaser, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase and take from Seller, free and clear of all liens and encumbrances as approved by the Bankruptcy Court (hereinafter defined) and subject to and in accordance with all of the terms and conditions of this Agreement, all that tract or parcel of land lying and being in **Land Lot 131 of the 20th District, 2nd Section, Cobb County, Georgia, Lot 16, Block F, Recreational Center Subdivision, and being commonly known as 1475 Wimbledon Drive, Kennesaw, Georgia 30144,** together with all rights, ways and easements appurtenant thereto, and all buildings, structures and other improvements located on the land and all lighting fixtures, mechanical, plumbing, air conditioning and other systems and fixtures as are attached or affixed thereto (hereinafter called the "Property").

2.    <u>Purchase Price; Method of Payment.</u>  The aggregate purchase price for the Property (hereinafter referred to as the "Purchase Price") shall be **TWO HUNDRED TWENTY-TWO THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($222,500.00)**. Purchaser shall pay to Seller at Closing (as subsequently defined) the Purchase Price, after crediting the Earnest Money, and subject to the pro-rations and adjustments hereinafter described, as follows:

> Purchaser shall pay the Purchase Price to Seller at Closing in cash or cash equivalent.  Purchaser's obligation to Close shall not be subject to any financial contingency unless set forth hereafter on **<u>EXHIBIT "C"</u>**.

3.    <u>Earnest Money.</u>  Prior to or contemporaneously with Purchaser's execution of this Agreement, Purchaser has delivered to Seller a check drawn upon good funds in the amount of **THREE THOUSAND AND NO/100 DOLLARS ($3,000.00)** (the "Earnest Money").  Seller shall, within five (5) business days following receipt, place the Earnest Money in an escrow account of Seller's choosing.  All parties to this Agreement acknowledge that Seller may deposit the Earnest Money in escrow/trust account and that Seller will be entitled to retain the interest earned on said Earnest Money deposit.  If the sale hereunder is consummated in accordance with the terms hereof, the Earnest Money shall be applied as part payment of the Purchase Price to be paid by Purchaser at the Closing.  In the event any earnest money check is not honored for any reason, by the bank upon which it is drawn, Seller shall promptly notify

11769631v1

Purchaser. Purchaser shall have 3 banking days after notice to deliver good funds to Seller. In the event Purchaser does not timely deliver good funds, the Seller shall have the right to terminate this Agreement upon written notice to the Purchaser. In the event of any default in the performance of the terms of this Agreement by Purchaser, the Seller may elect to accept the Earnest Money as liquidated damages in full settlement of any claim for damages and/or seek to enforce specific performance rights and obligations against the Purchaser under the terms of this Agreement.  In the event Purchaser fails to pay any portion of the Purchase Price, Purchaser shall be considered to have breached the Agreement and Seller shall have the right to re-offer the Property for sale to others and to demand liquidated damages equal to the amount of the Earnest Money and/or demand specific performance.   The parties acknowledge the difficulty of accurately estimating Seller's damages in the event of Purchaser's default and acknowledge that the amount of the Earnest Money is a reasonable pre-estimate of the probable loss to Seller resulting from Purchaser's default.  In such event, the Earnest Money shall constitute liquidated damages and shall not be deemed a penalty. In the event this Agreement is terminated by Purchaser in accordance with any right of Purchaser to do so under the terms hereof, the Earnest Money shall be returned to Purchaser.

4. <u>Access and Inspection; Examination by Purchaser, Examination Period.</u>

(a) Purchaser acknowledges that Purchaser has had an opportunity to inspect the Property and accepts the Property in its present condition. Purchaser and Seller acknowledge that Seller has no obligation to correct any objections Purchaser may have or to make any repairs to the Property. The Property is sold "AS IS, WHERE IS" AND WITH ALL FAULTS, including but not limited to lead-      based paint hazards and damage from termite and other wood-destroying organisms.   Purchaser agrees to indemnify and hold harmless Seller from and against any and all loss, costs, claims, injuries, and/or damages arising out of or relating to the acts of Purchaser or Purchaser's agents on the Property.

(b) Notwithstanding anything herein to the contrary, Seller's responsibility in connection with the Property shall cease upon Purchaser's acceptance of the Property.

5. <u>Closing.</u>  The closing of the purchase and sale of the Property, hereinafter called "Closing", shall take place on or before **April 30, 2018**, **or within ten (10) days following approval of the sale by the Bankruptcy Court** as provided in paragraph 31 hereof (herein called the "Closing Date"), at the offices of Seller or **Campbell & Brannon, LLC, 5565 Glenridge Connector, Suite 350, Atlanta, Georgia 30342; Telephone: 770.396.8535,** or at such other place as Seller and Purchaser may mutually agree upon. At the Closing, all gross proceeds (the "Proceeds") from the sale of the Property shall be paid directly to Seller for disbursement by the Seller to any claimants in accordance with the approval of the Bankruptcy Court (as hereinafter defined). Any valid lien or security interests in the Property shall be transferred from the Property to the Proceeds. All liens or security interests in the Property shall be null and void as to the Property upon appropriate Order of the Bankruptcy Court, and without the necessity of any separate cancellations or releases.

6.      Prorations and Adjustments to Purchase Price.   The following prorations and adjustments shall be made between Purchaser and Seller at Closing, or thereafter if Purchaser and Seller shall agree:

      (a)      All city, state and county ad valorem taxes and similar impositions levied or imposed upon or assessed against the Property, hereinafter called the "Taxes", for the year in which Closing occurs shall be prorated as of the Closing Date.  In the event the Taxes for such year are not determinable at the time of Closing, such Taxes shall be prorated on the basis of the best available information and will not be prorated post-closing by Seller;

      (b)      Any other items which are customarily prorated in connection with the purchase and sale of properties similar to the Property shall be prorated as of the Closing Date.

7.      [Intentionally omitted.]

8.      Disposal Systems and Water Source.   Purchaser shall determine the Disposal System and Water Source on the above-described Property.

9.      Title Examination.   Purchaser shall have a reasonable time after the date of this Agreement to examine title and to furnish Seller with a written statement of valid objections affecting the marketability of said title. Purchaser shall not be entitled to object to any of the following matters which affect title:  a) zoning ordinances affecting the Property, b) general utility, sewer and drainage easements of record, c) subdivision easements of record, d) any other leases, easements restrictions or encumbrances specified in this Agreement, and (e) liens and encumbrances that will be divested as a result of the approval of this sale by the Bankruptcy Court.  Seller shall have a reasonable time after receipt of such objections to satisfy all valid objections.  If Seller fails to satisfy such valid objections within a reasonable time, then, at the option of Purchaser evidenced by written notice to Seller, this Agreement shall be null and void. Marketable title as used herein shall mean title which an insurance company licensed to do business in the State of Georgia will insure at its regular rates, subject only to standard exceptions otherwise specified herein.   It is understood and agreed that the title herein required to be furnished by Seller shall be good and marketable, and marketability shall be determined in accordance with Georgia law as supplemented by the Title Standards of the State Bar of Georgia. It is agreed that any defect in the title which comes within the scope of any of said Title Standards shall not constitute a valid objection on the part of the Purchaser provided the Seller furnishes the affidavits or other title papers, if any, required in the applicable standard to cure such defect.  It is further agreed that failure of Seller to cure any title objections shall not be deemed to be a default under this Agreement.

10.      Proceedings at Closing.   On the Closing Date, the Closing shall take place as follows:

      (a)      Seller shall deliver to Purchaser the following documents and instruments, duly executed by or on behalf of Seller: (i) a Trustee's Deed, in the form of, and on the terms and conditions set forth in, that attached hereto as Exhibit "A", conveying the Property by the legal description set forth in

Paragraph 1 hereof; (ii) a Seller's Affidavit, in the form of, and on the terms and conditions set forth in, that attached hereto as Exhibit "B"; (iii) an affidavit of Seller's Residence in the form of and on the terms and conditions required by the Revenue Department for the State of Georgia; (iv) and such other instruments as are normal and customary in a purchase and sale transaction of this type; and

(b)     Purchaser shall pay the Purchase Price to Seller in accordance with the provisions of this Agreement.

11.     <u>Costs of Closing.</u>  Purchaser shall pay the State of Georgia real estate transfer tax payable on this transfer of the Property.  Seller shall pay Seller's attorneys' fees.  Except as otherwise expressly set forth on Exhibit "C" attached hereto and by this reference made a part hereof, Purchaser shall pay all loan closing costs, as well as all recording costs, the premium for any owner's policy of title insurance issued in favor of Purchaser insuring Purchaser's title to the Property, the cost of any survey of the Land obtained by Purchaser and Purchaser's and any lender attorneys' fees.  All other costs and expenses of the transaction contemplated hereby shall be borne by the party incurring the same.

12.     <u>Disclaimer of Warranties.</u>  Except for the warranty of title to be included in the Trustee's Deed to be delivered to Purchaser by Seller, Seller does not, by the execution and delivery of this Agreement, and Seller shall not, by the execution and delivery of any document or instrument executed and delivered in connection with Closing, make any warranty, express or implied, of any kind or nature whatsoever, with respect to the Property, and all such warranties are hereby disclaimed.  Without limiting the generality of the foregoing, SELLER MAKES, AND SHALL MAKE, NO EXPRESS OR IMPLIED WARRANTY OF SUITABILITY OR FITNESS OF ANY OF THE PROPERTY FOR ANY PURPOSE, OR AS TO THE MERCHANTABILITY, TITLE, VALUE, QUALITY, QUANTITY, CONDITION OR SALABILITY OF ANY OF THE PROPERTY.  The sale of the Property by Seller to Purchaser hereunder shall be "AS IS" and "WHERE IS".

13.     <u>Possession.</u>  Seller shall surrender possession of the Property to Purchaser on the Closing Date, subject to the Permitted Exceptions.

14.     [Intentionally omitted.]

15.     <u>Remedies.</u>  [Intentionally omitted.]

16.     <u>Damage or Destruction.</u>  Should the Property be destroyed or substantially damaged before time of Closing, Seller, immediately upon his knowledge of such damage or destruction, shall notify the Purchaser and Broker.

17.     <u>Condemnation.</u>  In the event of commencement of eminent domain proceedings or bona fide threat of such proceedings respecting any portion of the Property prior to Closing, Seller shall give Purchaser prompt written notice after Seller becomes aware thereof.  If, prior to Closing, all or any material part of the Property is taken by eminent domain proceedings, Purchaser shall have the right, at Purchaser's option, to terminate this Agreement by giving

written notice to Seller on or before the date ten (10) days after the date upon which Seller gives Purchaser written notice of such taking, in which event the Earnest Money shall be refunded to Purchaser promptly upon request, all rights and obligations of the parties under this Agreement shall expire, and this Agreement shall become null and void. In the event of a taking of less than all or a material part of the Property, Purchaser shall have no right to terminate this Agreement by reason of such taking; however, Seller shall assign to Purchaser all rights of Seller in and to the awards or other proceeds payable thereafter by reason of such taking.

18.     Association/Assessment Fees.     Purchaser shall determine if any mandatory association/ assessment fees are payable. Seller makes no representation about any such association and/or assessment fees.

19.     Disclaimer.

(a)     **Independent Expert Advice.** Purchaser acknowledges that Purchaser has not relied upon the advice or representations of Seller or of Seller's agents, attorneys, or employees, with reference to any matter, including but not limited to: legal and tax consequences of this Agreement in the sale of the Property; the terms and conditions of financing; the purchase and ownership of the Property; the structural condition of the Property; the operating condition of the electrical, heating, air conditioning, plumbing, water heating systems, pool, spa and appliances in the Property; the availability of utilities to the Property; the investment potential or resale value of the Property; the availability and ownership of amenity package, if applicable; restrictive covenants and architectural controls; or any other system or condition enumerated in the "Inspection of Property" paragraph above; planned or proposed zoning; proposed or planned changes to or widening of roadways; or any other condition or circumstance which may adversely affect the Property. Purchaser acknowledges that if such, or similar, matters have been of concern to Purchaser, Purchaser has sought and obtained independent advice relative thereto. Purchaser acknowledges that Closing shall constitute acceptance of the Property.

(b)     **Property Conditions.** Purchaser acknowledges that various substances used in the construction of the improvements on the Property or otherwise located on the Property may now or in the future be determined to be toxic, hazardous or undesirable and may need to be specially treated, handled and /or removed from the Property. Persons who have an interest in the Property may be required by law to undertake the cleanup of such substances. Purchaser acknowledges that: Seller has no expertise with respect to toxic wastes, hazardous substances or undesirable substances; such substances can be extremely costly to correct and remove. Seller has made no investigations or representations with respect to such substances; and Seller shall have no liability to Purchaser regarding the presence of said substances on the Property. Purchaser releases Seller and Seller's agents, attorneys, and employees from any claim, rights of action or suits relating to the presence of any hazardous substances, toxic wastes, or undesirable substances on the Property.

20.    <u>Assignment.</u>  This Agreement may not be assigned by Purchaser, in whole or in part, without the prior written consent of Seller.  No assignment shall relieve Purchaser of liability for the performance of Purchaser's duties and obligations under this Agreement.

21.    <u>Parties.</u>  This Agreement shall be binding upon and enforceable against, and shall inure to the benefit of, Purchaser and Seller and their respective heirs, legal representatives, successors and assigns.  The parties acknowledge that Seller is a court-appointed Bankruptcy Trustee and has no independent knowledge of the Property and has never seen the Property.

22.    <u>Broker and Commission.</u>  All negotiations relative to this Agreement and the purchase and sale of the Property as contemplated by and provided for in this Agreement have been conducted by and between Seller and Purchaser without the intervention of any person or other party as agent or broker other than Listing Broker and Selling Broker. Purchaser and Seller each represents and warrants to the other that, with the exception of any commission or fees provided for in the United States Bankruptcy Code, Title 11, United States Code, to be paid from Seller's proceeds, there are and there will be no agent's, broker's, or other intermediary's fees or commissions payable as a consequence of this transaction, and that they have not dealt with a broker, agent, or intermediary, who might by reason of such dealing have any claim for a fee, commission or other compensation with respect to the purchase and sale of the Property except for a fee of **six percent (6.0%)** of the Purchase Price that shall be divided and paid to Listing Broker and Selling Broker. Notwithstanding any provision to the contrary contained herein, any obligation of Seller to pay any fee described in this paragraph 22 shall be subject to Bankruptcy Court Approval of this Agreement as described in paragraph 31 hereof.  Seller and Purchaser agree to indemnify, hold harmless, defend and protect the other from and against any and all claims for commissions, compensation, expense or charge of whatever nature, including but not limited to leasing commission, on the part of any broker, agent or other intermediary claiming by reason of any dealing with them except as set forth in this paragraph 22.

23.    <u>Modification.</u>  This Agreement supersedes all prior discussions and agreements between Seller and Purchaser with respect to the purchase and sale of the Property and other matters contained herein, and this Agreement contains the sole and entire understanding between Seller and Purchaser with respect thereto.  This Agreement shall not be modified or amended except by an instrument in writing executed by or on behalf of Seller and Purchaser.

24.    <u>Applicable Law.</u>  This Agreement shall be governed by, construed under and interpreted and enforced in accordance with the laws of the United States of America and the State of Georgia. The parties agree that the Bankruptcy Court is a proper venue for any legal proceeding concerning this Agreement.

25.    <u>Counterparts.</u>  This Agreement may be executed in several counterparts, each of which shall be deemed an original, and all of such counterparts together shall constitute one and the same instrument.

26.    <u>Time.</u>  Time is and shall be of the essence of this Agreement.

27.     <u>Captions.</u>   The captions and headings used in this Agreement are for convenience only and do not in any way restrict, modify or amplify the terms of this Agreement.

28.     <u>Exhibits.</u>   Each and every Exhibit referred to or otherwise mentioned in this Agreement is attached to this Agreement and is and shall be construed to be made a part of this Agreement by such reference or other mention at each point at which such reference or other mention occurs, in the same manner and with the same effect as if each Exhibit were set forth in full and at length every time it is referred to or otherwise mentioned.

29.     <u>Notices.</u>   All notices, requests, demands, tenders, and other communications under this Agreement shall be in writing.   Any such notice, request, demand, tender or other communication shall be deemed to have been duly given when actually delivered, or one (1) day after being delivered to a nationally recognized commercial courier for next day delivery, or when deposited in the United States Mail, Certified Mail, Return Receipt Requested, with all postage prepaid, to the address for each party set forth below its execution of this Agreement.   Rejection or other refusal to accept, or inability to deliver because of changed address of which no notice was given, shall be deemed to be receipt of such notice, request, demand, tender, or other communication.   Any party, by written notice to the others in the manner herein provided, may designate an address different from that stated above.

30.     <u>Survival.</u>   The provisions of paragraphs 12 and 19 of this Agreement, and the indemnification provisions of paragraphs 4 and 22 of this Agreement, shall survive the consummation of the purchase and sale of the Property on the Closing Date, the delivery of the deed and the payment of the Purchase Price.   Notwithstanding anything to the contrary set forth in this Agreement, the provisions of paragraphs 12 and 19 of this Agreement, and the indemnification provisions of paragraphs 4 and 22 of this Agreement shall also survive any termination of this Agreement in accordance with its terms.

31.     <u>Bankruptcy Court Approval.</u>   Notwithstanding any other provision in this Agreement to the contrary, this Agreement shall be subject to and contingent upon the approval of the Bankruptcy Court (herein the "Bankruptcy Court") in that certain case pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, under **Case No. 17-54136-MGD** (the "Bankruptcy Case") authorizing the sale of the Property free and clear of all liens and encumbrances in accordance with the terms of this Agreement and with same to the extent valid, enforceable and unavoidable attaching to the net sale proceeds.   In the event the Bankruptcy Court fails to approve this Agreement on or prior to the date which is forty-five (45) days from the date of this Agreement, Seller may by notice to Purchaser terminate this Agreement, whereupon the Earnest Money shall be promptly refunded to Purchaser except as provided hereinabove with respect to a Purchaser's default, and this Agreement shall become null and void and the parties shall be relieved of and released from any and all further rights, duties, obligations and liabilities hereunder.   Seller reserves the right to contest and compromise any real estate ad valorem tax liability for the Property.   Purchaser agrees to cooperate with Seller regarding same so long as Seller bears all costs and expenses in connection therewith.

32.  <u>Home Warranty.</u>  Purchaser may obtain a home warranty at Purchaser's expense.

33.  <u>Locks Changed.</u>  Purchaser shall change the locks to the Property at Purchaser's expense.

34.  <u>Counterparts.</u>  This Agreement may be executed in one or more counterparts, each of which is an original, and all of which constitute only one agreement between the Parties. Counterparts of this Agreement also may be exchanged via electronic transmission such as facsimile machines or computer, and any Party's signature transmitted by such electronic transmission shall be deemed to be an original signature for all purposes.

35.  <u>Special Stipulations.</u>  The special stipulations, if any, attached hereto as **EXHIBIT "C"** if conflicting with any preceding paragraphs shall control; the preceding paragraphs shall not control.

36.  <u>Lead-Based Paint</u>.  The lead-based paint warning and disclosure statement is attached hereto as **Exhibit "D."**

This Agreement shall be open for acceptance **until 11:59 p.m. on March 19, 2018,** which acceptance date shall constitute the effective date of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal, as of the day and year first written above.

Accepted by Seller this _____ day of March, 2018.

SELLER:

_____ [SEAL]
WILLIAM J LAYNG, JR., AS AND ONLY AS
TRUSTEE IN BANKRUPTCY FOR THE
ESTATE OF BILLIE JO DAVIS

Initial address for notices:
c/o Arnall Golden Gregory LLP
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363

RE/MAX PRESTIGE
License No. H-47450

By:
_____ [SEAL
Printed Name:        Tony Money
                     License No 118444
Title:               Realtor

Accepted by Purchaser this _____ day of March, 2018.

PURCHASER:


_____ [SEAL]
DAVID STROUP

SELLING BROKER:
RE/MAX GREAT ATLANTA
License No. H-63190

By:


_____ [SEAL]
Printed Name:        David Stroup
                     License No. 159200
Title:               Realtor

## PURCHASE AND SALE AGREEMENT

### Index to Exhibits

Exhibit "A"    -    Form of Trustee's Deed of Real Estate

Exhibit "B"    -    Form of Seller's Affidavit

Exhibit "C"    -    Special Stipulations (If Any)

## EXHIBIT "A"

### Form of Trustee's Deed of Real Estate

11769631v1

Return to:
Michael Campbell, Esq.
Campbell & Brannon, LLC
Glenridge Highlands Two
5565 Glenridge Connector
Suite 350
Atlanta, Georgia 30342

STATE OF GEORGIA

COUNTY OF FULTON

<u>**TRUSTEE'S DEED OF REAL ESTATE**</u>

THIS INDENTURE, made this **30th** day of **April, 2018** between **WILLIAM J. LAYNG, JR., as and only as Trustee in Bankruptcy for the Estate of BILLIE JO DAVIS,** the Debtor, in a case now pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, under **Case No. 17-54136-MGD,** filed on **March 6, 2017** (hereinafter called "Grantor"), and **DAVID STROUP** (hereinafter called "Grantee").

Grantor, as owner of record and pursuant to his power as Trustee, as set forth in the copy of the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines attached as **<u>EXHIBIT "A"</u>** and by virtue of the power and authority given in and by that Order (the "Sale Order") entered upon the Trustee's Motion to Sell Property Free and Clear of Liens Pursuant to 11 U.S.C. §363(b) and (f), which Sale Order was entered by the United States Bankruptcy Court for the Northern District of Georgia on **April _____, 2018**, a copy of which is attached as **<u>EXHIBIT B",</u>** and in consideration of TEN DOLLARS ($10.00), lawful money of the United States paid by the Grantee, receipt whereof is hereby acknowledged, and other good and valuable consideration, does hereby grant, bargain, sell, convey and release unto the Grantee, its heirs and assigns forever:

AL THAT TRACT OR PARCEL OF LAND LYING AND BEING LOT 131 OF THE 20TH DISTRICT, 2ND SECTION, COBB COUNTY, GEORGIA, BEING LOT 16, BLOCK F, RECREATION CENTER, AS PER PLAT RECORDED IN PLAT BOOK 21, PAGES 146-147, COBB COUNTY RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE.

SAID PROPERTY COMMONLY KNOWN AS 1475 WIMBLEDON DRIVE, KENNESAW, COBB COUNTY, GEORGIA 30144.

_____
Seller's Initials

11769631v1

with the appurtenances and all of the estate which the said **BILLIE JO DAVIS,** the Debtor, had in said premises at the time of the filing of his Voluntary Petition for Relief in the United States Bankruptcy Court for the Northern District of Georgia, and also the estate therein which the Grantor had or has power to convey or dispose of as Trustee in Bankruptcy for said Debtor, **BILLIE JO DAVIS,** pursuant to the Sale Order (collectively the "Property").

TO HAVE AND TO HOLD the Property herein granted unto the Grantee, its heirs and assigns forever.

IN WITNESS WHEREOF, Grantor has hereunto set his hand and seal the day and year first above written.

GRANTOR:

Signed, sealed and delivered on
the 30th day of April, 2018,
in the presence of:

_____          _____ [SEAL]
Unofficial Witness                        **WILLIAM J. LAYNG, JR.,** as and only as
                                          Trustee in Bankruptcy for the Estate of
                                          **BILLIE JO DAVIS,** pursuant to the
                                          Bankruptcy Court Order Authorizing the Sale of
_____          the Property
Notary Public
My Commission Expires: _____

        [NOTARY SEAL]

## TRUSTEE'S DEED OF REAL ESTATE

### Index to Exhibits

Exhibit "A"      -      Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines

Exhibit "B"      -      Sale Order

## EXHIBIT "A" of TRUSTEE'S DEED OF REAL ESTATE

### Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines

| Information to identify the case: | | |
|---|---|---|
| Debtor 1 | **Billie Jo Davis** | Social Security number or ITIN   **xxx–xx–6538** |
| | First Name   Middle Name   Last Name | EIN   _ _ – _ _ _ _ _ _ _ |
| Debtor 2 (Spouse, if filing) | First Name   Middle Name   Last Name | Social Security number or ITIN   _ _ _ _ |
| | | EIN   _ _ – _ _ _ _ _ _ _ |
| United States Bankruptcy Court   **Northern District of Georgia** Court website: www.ganb.uscourts.gov | | Date case filed for chapter **7   3/6/17** |
| Case number:   **17–54136–mgd** | | |

## Official Form 309A (For Individuals or Joint Debtors)
## Notice of Chapter 7 Bankruptcy Case –– No Proof of Claim Deadline    12/15

For the debtors listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered.

This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read both pages carefully.

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtors' property. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay.

The debtors are seeking a discharge. Creditors who assert that the debtors are not entitled to a discharge of any debts or who want to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadlines specified in this notice. (See line 9 for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at www.pacer.gov). Copy fees or access charges may apply. A free automated response system is available at 866–222–8029 (Georgia Northern). You must have case number, debtor name, or SSN when calling.

**The staff of the bankruptcy clerk's office cannot give legal advice.**

To help creditors correctly identify debtors, debtors submit full Social Security or Individual Taxpayer Identification Numbers, which may appear on a version of this notice. However, the full numbers must not appear on any document filed with the court.

Do not file this notice with any proof of claim or other filing in the case. Do not include more than the last four digits of a Social Security or Individual Taxpayer Identification Number in any document, including attachments, that you file with the court.

| | About Debtor 1: | About Debtor 2: |
|---|---|---|
| **1. Debtor's full name** | Billie Jo Davis | |
| **2. All other names used in the last 8 years** | | |
| **3. Address** | 1455 Wimbledon Drive, N.W. Kennesaw, GA 30144 | |
| **4. Debtor's attorney** Name and address | Ronna M. Woodruff Woodruff Law LLC 123 Powers Ferry Road, SE Marietta, GA 30067  Contact phone 770–565–7924 Email: rwoodrufflaw@yahoo.com | |
| **5. Bankruptcy trustee** Name and address | William J. Layng Jr. William J. Layng, Jr., PC Suite 3477 2451 Cumberland Parkway Atlanta, GA 30339–6157 | Contact phone (404) 276–4749 |

**For more information, see page 2 >**

Debtor **Billie Jo Davis**                                                                                        Case number **17–54136–mgd**

| | | |
|---|---|---|
| **6.** **Bankruptcy clerk's office**<br><br>Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov. | M. Regina Thomas<br>Clerk of Court<br><br>1340 United States Courthouse<br>75 Ted Turner Drive SW<br>Atlanta, GA 30303 | Office Hours: 8:00 a.m. – 4:00 p.m.<br><br>Court website: www.ganb.uscourts.gov<br><br>Contact phone 404–215–1000 |
| **7.** **Meeting of creditors**<br><br>Debtors must attend the meeting to be questioned under oath. In a joint case, both spouses must attend. Bring a copy of this notice with you. Creditors may attend, but are not required to do so. Cellular phones and other devices with cameras are not allowed in the building. | **April 11, 2017 at 08:30 AM**<br><br>The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket.<br><br>TO THE DEBTOR: Bring an original government issued photo ID and confirmation of social security number. Provide the Trustee a copy of your most recently filed tax return seven days prior to the meeting, but DO NOT FILE WITH THE COURT. | Location:<br><br>**Third Floor – Room 367, Russell Federal Building, 75 Ted Turner Drive SW, Atlanta, GA 30303** |
| **8.** **Presumption of abuse**<br><br>If the presumption of abuse arises, you may have the right to file a motion to dismiss the case under 11 U.S.C. § 707(b). Debtors may rebut the presumption by showing special circumstances. | The presumption of abuse does not arise. | |
| **9.** **Deadlines**<br><br>The bankruptcy clerk's office must receive these documents and any required filing fee by the following deadlines. | **File by the deadline to object to discharge or to challenge whether certain debts are dischargeable:**<br><br>**You must file a complaint:**<br>• if you assert that the debtor is not entitled to receive a discharge of any debts under any of the subdivisions of 11 U.S.C. § 727(a)(2) through (7), or<br>• if you want to have a debt excepted from discharge under 11 U.S.C § 523(a)(2), (4), or (6).<br><br>**You must file a motion:**<br>• if you assert that the discharge should be denied under § 727(a)(8) or (9). | **Filing deadline: 6/12/17** |
| | **Deadline to object to exemptions:**<br>The law permits debtors to keep certain property as exempt. If you believe that the law does not authorize an exemption claimed, you may file an objection. | **Filing deadline:** 30 days after the *conclusion* of the meeting of creditors |
| **10. Proof of claim**<br><br>Please do not file a proof of claim unless you receive a notice to do so. | No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now. If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline. | |
| **11. Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |
| **12. Exempt property** | The law allows debtors to keep certain property as exempt. Fully exempt property will not be sold and distributed to creditors. Debtors must file a list of property claimed as exempt. You may inspect that list at the bankruptcy clerk's office or online at www.pacer.gov. If you believe that the law does not authorize an exemption that the debtors claim, you may file an objection. The bankruptcy clerk's office must receive the objection by the deadline to object to exemptions in line 9. | |

## EXHIBIT "B" of TRUSTEE'S DEED OF REAL ESTATE

### Sale Order

**EXHIBIT "B"**

**Seller's Affidavit**

STATE OF GEORGIA
COUNTY OF FULTON

### SELLER'S AFFIDAVIT

The undersigned, being duly sworn, states:

That the undersigned is the duly authorized and appointed Trustee in Bankruptcy for the Estate of **Billie Jo Davis**, United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, **Case No. 17-54136-MGD,** subject to a bankruptcy court order authorizing the sale of the Property described hereafter ("Seller") and is duly authorized to execute this affidavit;

That Seller, in his capacity as the Bankruptcy Trustee, is the owner of the real property described in **Exhibit "A"** attached hereto and incorporated herein by reference (the "Property");

That Seller has never seen the Property and makes no warranties or representations in regard thereto.  Seller has no knowledge of any disputes concerning the location of the lines and corners of the Property;

That Seller has no knowledge of any improvements or repairs which have been made by or at the instance of Seller on the Property during the three (3) months immediately preceding the date of this affidavit and has never seen the Property;

That, except for the matters set forth on **Exhibit "B"** attached hereto and incorporated herein by reference, to the best of the knowledge of the undersigned, in his capacity as the Bankruptcy Trustee, there are no outstanding indebtedness for or liens against any equipment or fixtures attached to, installed on, the Property or any improvements thereon;

That to the best of the knowledge of Seller, there are no persons or other parties in possession of the Property who have a right or claim to possession extending beyond the date hereof;

That, to the best of the knowledge of Seller, there are no pending suits, proceedings, judgments, other bankruptcies, liens or executions against Seller, in his capacity as the Bankruptcy Trustee, which affect title to the Property, the improvements thereon or the fixtures attached thereto; and

That Seller is making this affidavit with the knowledge that it will be relied upon by **DAVID STROUP** in purchasing the Property from Seller and by purchaser's lender in making a loan on the Property and by a title insurance company insuring the status of title to the Property.

Sworn to and subscribed before me
this 30th day of April, 2018.

_____
Notary Public
My Commission expires:_____

[NOTARY SEAL]

_____[SEAL]
**WILLIAM J. LAYNG, JR.**, as and only as Trustee in Bankruptcy of the Estate of **Billie Jo Davis,** pursuant to Bankruptcy Court Order Authorizing the Sale of the Property

<u>**SELLER'S AFFIDAVIT**</u>

**Index to Exhibits**

Exhibit "A"      -        Legal Description of the Property

Exhibit "B"      -        Permitted Exceptions

## EXHIBIT "A"

### Legal Description of the Property

AL THAT TRACT OR PARCEL OF LAND LYING AND BEING LOT 131 OF THE 20TH DISTRICT, 2ND SECTION, COBB COUNTY, GEORGIA, BEING LOT 16, BLOCK F, RECREATION CENTER, AS PER PLAT RECORDED IN PLAT BOOK 21, PAGES 146-147, COBB COUNTY RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE.

SAID PROPERTY COMMONLY KNOWN AS 1475 WIMBLEDON DRIVE, KENNESAW, COBB COUNTY, GEORGIA 30144.

## EXHIBIT "B"

## Permitted Exceptions

1.     *Ad valorem* real property taxes and assessments outstanding, and the Estate's pro-rated share of 2018.

2.     All other matters disclosed by the public records.

3.     Zoning ordinances affecting the property.

## EXHIBIT "C"

## Special Stipulations

1.      Purchaser understands the Property is being sold "as is, where is" and waives the right to request repairs.

2.      Purchaser understands there is no disclosure statement included as part of this Agreement.

3.      Purchaser shall be responsible for having the utilities turned on for the purpose of any inspections.

4.      Purchaser is responsible for acquiring any information regarding any homeowners associations and/or associated homeowners fees.

5.      The Agreement is for an ***all-cash*** sale and subject to no financing, inspection, or appraisal contingency.

6.      Purchaser has tendered the earnest money to Re/Max Greater Atlanta in the amount of THREE THOUSAND AND NO/100 DOLLARS ($3,000.00).

7.      Subject to approval of the sale by the Bankruptcy Court, the closing on the sale will take place on or before April 30, 2018, or within ten (10) days following the Bankruptcy Court approval.

8.      The Purchaser is a licensed real estate agent in the state of Georgia and is acting for himself in this transaction.

253476-1



**LEAD-BASED PAINT**
**EXHIBIT "___D___"**



**2018 Printing**

This Exhibit is part of the Agreement with an Offer Date of _____March 12, 2018_____ for the purchase and sale or lease of that certain Property known as: _____1475 Wimbledon Drive NW_____, _____Kennesaw_____, Georgia **30144**.

1. **Purchase and Sale or Lease Transaction Lead Warning Statement.**
   Every purchaser or tenant of any interest in residential property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller or Landlord of any interest in residential real property is required to provide the Buyer or Tenant with any information on lead-based paint hazards from risk assessments or inspections in the Seller's or Landlord's possession and notify the Buyer or Tenant of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

2. **Seller's/Landlord's Disclosure.** _____
   **Initials of Seller / Landlord**

   **A.** Presence of lead-based paint and/or lead paint hazard *[check one below]:*
   ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain below):
   _____
   ☒ Seller/Landlord has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

   **B.** Records and Reports available to the Seller/Landlord *[check one below]:*
   ☐ Seller/Landlord has provided the Buyer/Tenant with all the available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list document below):
   _____
   ☒ Seller/Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

3. **Buyer's/Tenant's Acknowledgment.** _____DS_____
   **Initials of Buyer / Tenant**

   **A.** Buyer/Tenant has received copies of all information, if any, listed above.
   **B.** Buyer/Tenant has read and understands the above lead warning statement and has received the pamphlet "*Protect Your Family from Lead in Your Home*".
   **C.** Buyer/Tenant has *[check one below]:*
   ☐ Received a ten (10) day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
   ☒ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

4. **Broker's Acknowledgment.** _____DS_____
   **Initials of Broker or Licensee of Broker**

   Broker has informed the Seller/Landlord of the Seller's/Landlord's obligations under 42 U.S.C. § 4852(d) and is aware of his/her responsibility to ensure compliance.

5. **Certification of Accuracy.**
   The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

   _David Stroup_____  _Mar 12, 2018____        _____  _____
   **1 Buyer/Tenant Signature**        Date                **1 Seller/Landlord Signature**        Date

   _____  _____        _____  _____
   **2 Buyer/Tenant Signature**        Date                **2 Seller/Landlord Signature**        Date

   Additional Signature Page (F149/F150) ☐ is ☒ is not attached.        Additional Signature Page (F149/F150) ☐ is ☒ is not attached.

   _David Stroup_____  _Mar 12, 2018____        _____  _____
   Selling/Leasing Broker              Date                Listing Broker                        Date

**NOTE: It is the intent of this Exhibit that it be applicable to both the sale and leasing of Property. The use of terms like "Buyer/Tenant" shall mean either a Buyer or a Tenant or both as the context may indicate.**

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH _____DAVID STROUP_____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2018 by Georgia Association of REALTORS®, Inc.                F54, Lead-Based Paint Exhibit, 01/01/18

## CERTIFICATE OF SERVICE

This is to certify that I, Michael J. Bargar, am over the age of 18 and that on this day I have caused to be served a copy of the forgoing *Trustee's Motion for Authority to (I) Sell Real Property of the Estate Free and Clear of All Liens, Interests and Encumbrances, and (II) Disburse Certain Proceeds at Closing* by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery by first class United States Mail, or certified mail, as indicated, to the following persons at the addresses stated:

### *Via First Class Mail:*

Office of the United States Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

William J. Layng, Jr.
William J. Layng, Jr., PC
Suite 3477
2451 Cumberland Parkway
Atlanta, GA 30339-6157

Internal Revenue Service
Insolvency Unit
401 West Peachtree Street
Stop 335-D
Atlanta, GA 30308

Internal Revenue Service
401 West Peachtree Street
Stop 334-D
Atlanta, GA 30308

Department of Justice - Tax Division
Attn: Chief, Civil Trial Section
Southern Region
P.O. Box 14198
Ben Franklin Station
Washington, D.C. 20044

United States Attorney General
Main Justice Building
10th and Constitution Avenue, NW
Washington, D.C. 20530

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

U.S. Attorney
Northern District of Georgia
Civil Division, Attn: Civil Clerk
600 Richard B. Russell Building
75 Ted Turner Drive, S.W.
Atlanta, GA 30303

S. Kee-Jackson
Bankruptcy Specialist
Internal Revenue Service
801 Broadway M/S MDP 146
Nashville, TN 37203

Georgia Department of Revenue
Compliance Division
ARCS – Bankruptcy
1800 Century Blvd NE, Suite 9100
Atlanta, GA 30345-3202

Office of the Attorney General
40 Capitol Square, SW
Atlanta, GA 30334

Kelsea L. S. Laun
Gilroy Bailey Trumble LLC
3780 Mansell Road, Suite 140
Alpharetta, GA  30022

12069739v1

Gilroy Bailey Trumble LLC
3780 Mansell Road, Suite 140
Alpharetta, GA 30022

Bryce Noel
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, NE, Suite 500
Atlanta, GA 30305

Billie Jo Davis
1455 Wimbledon Drive, NW
Kennesaw, GA 30144

Law Office of Robert Eckard & Associates,
P.A.
3110 Alternate US 19 North
Palm Harbor, FL 34683

Robert C. Gritter
13819 John Casson Avenue
Hudson, FL 34667

Fauzia Makar
Law Office of Robert Eckard &
Associates, P.A.
3110 Alternate US 19 North
Palm Harbor, FL 34683

Cobb County Tax Commissioner
P.O. Box 100127
Marietta, GA 30061-7027

Carla Jackson
Cobb County Tax Commissioner's Office
Property Tax Division
736 Whitlock Avenue
Marietta, GA 30064

Ronna M. Woodruff
Woodruff Law LLC
123 Powers Ferry Road, SE
Marietta, GA 30067

Billie Jo Davis
1455 Wimbledon Drive, N.W.
Kennesaw, GA 30144

Michael Campbell
**ATTENTION: Denise Hammock**
Campbell & Brannon, LLC
5565 Glenridge Connector
Suite 350
Atlanta, GA 30342

Lynn Riley
State of Georgia Revenue Commissioner
1800 Century Boulevard
Suite 15300
Atlanta, GA 30345

Georgia Department of Revenue
Bankruptcy Insolvency Unit
1800 Century Boulevard
Suite 1700
Atlanta, GA 30345

### _Via First Class Mail and Certified Mail_

Timothy J. Sloan, President and CEO
Wells Fargo Bank, N.A.
420 Montgomery Street, 12th Floor
San Francisco, CA 94163

Timothy J. Sloan, President and CEO
Wells Fargo Bank, N.A.
101 N. Phillips Avenue
Sioux Falls, SD 57104

This 28th day of March, 2018.

_/s/ Michael J. Bargar_
Michael J. Bargar
Georgia Bar No. 645709